**"IFight4Justice", Law Office of Predrag Filipovic, Esq.**
**Predrag Filipovic, Esquire**
**PA Bar ID #312568**
**1635 Market St., Suite 1600**
**Philadelphia, PA, 19103**
**Tel: 267-265-0520;  Fax: 215-974-7744;**                    **Attorney for Plaintiffs**

| | | |
|---|---|---|
| Judson A. Rideout, Jay J. Rideout, Joseph M. Rideout | : : | E.D. of Pennsylvania |
| vs. | : | |
| : Wells Fargo Bank N.A, | : | July TERM, 2021 NO:_ |

# CIVIL COMPLAINT

**(73 P.S. § 201-1, et seq.,(UTPCPL), Common Law Fraud in Execution, NIID, IIED, Negligence)**

# PARTIES

1. Plaintiffs in this Action are Judson A Rideout, Jay J. Rideout and Joseph M. Rideout, are all biological brothers, and all adult residents of Pennsylvania, hereafter referred to as ("Rideout Bros"), who are all citizens of Commonwealth of Pennsylvania at all times relevant hereto.

2. Defendant, Wells Fargo Bank N.A. is upon belief a financial institution, *inter alia* providing services for demand deposit (checking and savings accounts), and other consumer and commercial banking services to the general public across the nation

3. Defendant ("WF"), has is a upon belief a corporation incorporated in the State of Delaware, and its "day to day" corporate headquarters is in San Francisco, California.

## JURISDICTION

4. This Court has jurisdiction pursuant to a Diversity Jurisdiction Statute in 28 U.S. Code § 1332, in that there is complete diversity between all the Plaintiffs and the Defendant WF, who is a citizen of State of Delaware (place of incorporation) and State of California (day to day headquarters), and the amount of controversy is easily over jurisdictional threshold of $75,000.

## STATEMENT OF CLAIM COMMON TO ALL COUNTS

5. Rideout Bros had a common misfortune in that their father, Jay M. Rideout, was killed in a MVA which occurred in 2015 in Bucks County, PA.

6. Judson's Bros mother, Elenore Judson, was the chief named Plaintiff in the case against the tortfeasor in the accident which killed her husband J.M. Rideout, and which was litigated in Bucks County CCP, docketed under 2016-0127.

7. However, in addition to the payment to Elenore Rideout, the Court Approved Settlement of their father's estate mandated payments of $20, 863.30 to each of her Rideout Bros, above named Plaintiffs, ("the Settlement"), See **Exhibit A.**

8. As a result, the Plaintiff's firm who litigated their late father's wrongful death case, (Sprague&Spreague), properly issued settlement checks in fee simple

titled to to each of the Rideout Bros, to their respective names, for their respective portions of the settlement. See **Exhibit B.**

9. Upon belief, same letter and check as is depicted in **Exhibit B**, was issued to other two Rideout Bros., to all three above named Plaintiffs., however checks were not mailed to the Judson Bros but mailed to their previous permanent address on file, their parental home, where the widow, mother Elenore.

10. Due to the fraudulent and deceptive actions and omissions of the Defendant, Wells Fargo, none of the Judson Bros ever received any monies from the Settlement, nor those checks, not a penny nor a dime.

### VIOLATION of the "UTPCPL, 73 P.S. §201-1 et seq."

11. Plaintiffs repeat and re allege all previous counts as if fully stated herein at length.

12. In recent history in opening and maintaining demand deposit accounts without knowledge or permission random individuals subject to such highly illegal, self-serving practice. See **Exhibit C.**

13. Although this case is materially different in other regards, as for Wells Fargo, they did the same thing, in that they opened and transacted through accounts titled under all three Rideout Bros, without their knowledge, or permission depriving them of any and all monies, in doing so.

14. Only the mother E. Rideout, knew of the WF accounts as she participated with WF in their opening and channeling of the Judson Bros settlement checks through those accounts, without them receiving any of it.

15. Without Plaintiff Rideout Bros, knowledge or permission, Wells Fargo opened up demand deposit account titled under Elenore Rideout name, however, also titled the accounts under joint owners' names for the remaining Judson Bros, without ever obtaining any signatures from any Rideout Bros, (nor ID, nor any personal contact), so that WF had no way of knowing what an authentic signature by any of the Rideout Bros looks like . See **Exhibit D.**

16. Wells Fargo knew or should have known that neither Judson, Jay, nor Joseph Rideout ever came into the branch, in person or remotely, nor can WF show any documents, or signatures or in any way shape or form manifested his consent to the opening of any such account with Wells Fargo, and all the mail went to mother's address she herself provided along with all other personal data. See **Exhibit D**.

17. Nevertheless, after WF enabled mother to deposit the Rideout Bros settlement checks they also allowed her to cash through the same Wells Fargo account on which Rideout Bros falsely appear as signatories, wherein back of the check endorsement were forged.  See **Exhibits D and E.**

18. Because Wells Fargo grossly failed to obtain necessary in person verifications in opening the Rideout Bros accounts, such as a in person ID or signature or any direct contact information, they had foreclosed any avenue of knowing which checks were signed by Rideout Bros, as opposed to being forged.

19. In doing so Wells Fargo violated also **Section 326** of the Patriot **Act ( 8 U.S. Code § 1701),** which requires reasonable procedures for maintaining records of the information used to verify a person's name, address, and other identifying information. The proposed regulation sets forth recordkeeping procedures that must be included in a bank's CIP.[1]

20. After Rideout Bros reported the incident to WF Loss Management, and the reported that they got dupped and never received a penny of the monies stemming to them from the settlement of their Father's wrongful death, WF did an investigation and admitted they had none of the documents or proof of account ownership for any of the Plaintiffs, but incredibly decided not to compensate them at all, daring them to file this action instead.

---

[1] Section 326 of the Act provides that the regulations must contain certain requirements. At a minimum, the regulations must require financial institutions to implement reasonable procedures for (1) verifying the identity of any person seeking to open an account, to the extent reasonable and practicable; (2) maintaining records of the information used to verify the person's identity, including name, address, and other identifying information; and (3) determining whether the person appears on any lists of known or suspected terrorists or terrorist organizations provided to the financial institution by any government agency. See also 31 CFR 103.11(c).

21. For its own pecuniary gain, best explained by the same motivating factors that appear in their 3 billion settlement, in this case WF again engaged in illegal account opening, and maintenance scheme however in this case, additionally, effectuated by the actions of the mother, E.R.

22. Wells Fargo's conduct was at least deceptive and misleading and could lead and did lead to loss and confusion and worse to unlawful results and deprivation of significant monetary value not limited to the amount on the checks, (**$62,470**), however also interest, loss of investment opportunity, loss of educational goals, and other pecuniary losses.

23. WFss conduct is also a direct and proximate cause of humiliation, anxiety, loss of sleep, loss of life's enjoyment of the Rideout Bros, the full extent of which is yet to be determined.

24. In conduct described above Wells Fargo intentionally or at least recklessly cashed Rideout Bros checks without their signature or any way to know what their signatures actually look like, through a fake account they established in their names in violation of all applicable laws and regulations cited above.

25. Under Gregg v. Amerprise Financial Inc., A.3d 2021 WL 607486 (Pa. Feb. 17, 2021), and even before this ruling WF has committed an actionable violation of UTPCPL under circumstances which warrant exercise of discretion for full treble damages and attorney fees.

**WHEREFORE** Plaintiffs pray that this Honorable Court find enter a Judgment in their favor for all damages it finds due and enter any other relief it sees just and equitable.

### COUNT TWO COMMON LAW FRAUD

26. Plaintiffs repeat and realleges all previous paragraphs as if fully stated herein at length.

27. In conduct described above Wells Fargo intentionally or at least recklessly cashed Rideout Bros checks without their signature or any way to know what their signatures actually look like, through a fake account they established in their names in violation of all applicable laws and regulations cited above.

28. In conduct described above, Wells Fargo engaged in fraudulent account opening scheme this time aided by a family member of the victims of the fraudulent account opening scheme. [2]

29. As State of Pennsylvania is concerned the following is an accurate depiction of Wells Fargo's conduct:

HARRISBURG –Attorney General Josh Shapiro today announced that Wells Fargo Bank N.A., the nation's biggest bank, will pay $575 million to resolve claims that the bank violated state consumer protection laws by: (1) opening millions of unauthorized accounts and enrolling customers into online banking services without their knowledge or consent, (2) improperly referring customers for enrollment in

---

[2] Now, the U.S. Justice Department is getting involved, investigating whether Wells Fargo's sales practices broke any laws. Sen. Elizabeth Warren, for one, accused the bank of "staggering fraud."

third-party renters and life insurance policies, (3) improperly force-placing and charging more than 850,000 auto finance customers for unnecessary and duplicative insurance policies, (4) failing to ensure that customers received refunds of unearned premiums on certain optional auto finance products, and (5) incorrectly charging customers for mortgage rate lock extension fees.

Attorney General Shapiro's Bureau of Consumer Protection co-led the investigation and negotiation of the settlement.  As a result of this settlement, Wells Fargo will be forced to change its corporate behavior to ensure that these types of abuses will not happen again.  Additionally, the company will be forced to pay a sum of money to consumers who were harmed – though that amount is confidential under the terms of settlement- and pay the Commonwealth of Pennsylvania $16.5 million, which will be remitted to the Pennsylvania Treasury.

"Wells Fargo is paying over half a billion dollars to the states because of conduct that caused widespread harm on a national level, in bank accounts, auto loans, and mortgages," said Attorney General Shapiro. "This bank opened millions of accounts for customers who didn't know about them, charged auto finance customers for insurance policies they didn't want or need, and charged mortgage customers over $100 million in unwarranted fees. With this settlement, we are holding Wells Fargo accountable and changing corporate conduct to protect consumers."

**Unrealistic Sales Goals Led to Millions of Unauthorized Accounts**

Wells Fargo has identified more than 3.5 million accounts where customer accounts were opened, funds were transferred, credit card applications were filed, or debit cards were issued without the customers' knowledge or consent. The bank has also identified 528,000 online bill pay enrollments nationwide that may have resulted from improper sales practices at the bank.  In addition, Wells Fargo improperly submitted more than 6,500 renters insurance and/or simplified term life insurance policy applications and payments from customer accounts without the customers' knowledge or consent.

The states alleged that Wells Fargo imposed aggressive and unrealistic sales goals on bank employees and implemented an incentive compensation program where employees could qualify for credit by selling certain products to customers. The states alleged that these sales goals and incentive compensation created an impetus for employees to engage in improper sales practices in order to earn financial rewards. Those sales goals became increasingly difficult to achieve over time, the states alleged, and employees who failed to meet them faced potential termination and career-hindering criticism from their supervisors.

See **https://www.attorneygeneral.gov/taking-action/press-**

**releases/attorney-general-shapiro-announces-575-million-50-state-**

[settlement-with-wells-fargo-bank-for-opening-unauthorized-accounts-and-charging-consumers-for-unnecessary-auto-insurance-mortgage-fees/](#);

30. WFs fraud resulted in all ill consequences cited above.

31. Prior to this incident at issue in this Complaint, Rideout Bros have not been a part of any settlement with WF, nor did they receive any compensation from any of the settlements WF had been a part of, directly or indirectly.

**WHEREFORE** Plaintiffs pray that this Honorable Court find enter a Judgment in their favor for all damages it finds due and enter any other relief it sees just and equitable, including punitive damages and attorney fees.

### COUNT III, Negligent Infliction of Emotional Distress

32. Plaintiffs repeat and re allege all prior averments as if fully stated herein.

33. WFs conduct described in detail in this complaint amounts to a Negligent Infliction of Emotional Distress, Under the Pennsylvania Supreme Court ruling in Toney v. Chester County Hospital, 36 A.3d 83 (Pa. 2011), as it foreseeably affected Redeout Bros in the manner that is actionable under this ruling.

34. In Toney, Pennsylvania Supreme Court duly noted:" After considering the arguments of the parties and the analysis of other states, we conclude that

settlement-with-wells-fargo-bank-for-opening-unauthorized-accounts-and-charging-consumers-for-unnecessary-auto-insurance-mortgage-fees/;

30. WFs fraud resulted in all ill consequences cited above.

31. Prior to this incident at issue in this Complaint, Rideout Bros have not been a part of any settlement with WF, nor did they receive any compensation from any of the settlements WF had been a part of, directly or indirectly.

**WHEREFORE** Plaintiffs pray that this Honorable Court find enter a Judgment in their favor for all damages it finds due and enter any other relief it sees just and equitable, including punitive damages and attorney fees.

### COUNT III, Negligent Infliction of Emotional Distress

32. Plaintiffs repeat and re allege all prior averments as if fully stated herein.

33. WFs conduct described in detail in this complaint amounts to a Negligent Infliction of Emotional Distress, Under the Pennsylvania Supreme Court ruling in Toney v. Chester County Hospital, 36 A.3d 83 (Pa. 2011), as it foreseeably affected Redeout Bros in the manner that is actionable under this ruling.

34. In Toney, Pennsylvania Supreme Court duly noted:" After considering the arguments of the parties and the analysis of other states, we conclude that

justification exists to extend NIED liability to a subset of cases involving preexisting relationships. In so doing, we consider the standard elements of negligence claims: duty, breach, causation, and damages. See "The Law of Torts", § 114, at 269-71 ... As with other states, we find it prudent to limit the reach of this NIED claim to preexisting relationships involving duties that obviously and objectively hold the potential of deep emotional harm in the event of breach. As explained by these states, the special relationships must encompass an implied duty to care for the plaintiffs emotional well-being. The potential emotional harm must not be the type that a reasonable person is expected to bear. Compensable emotional harm has been described as "likely to be experienced as a visceral and devastating assault on the self' such that it "resemble[ s] physical agony in its brutality." Keating. 44 Wake Forest L. Rev. at 1174." 89. Pennsylvania Supreme Court further noted that "It is impossible, and indeed would be irresponsible on our part, to create an exhaustive list of qualifying relationships in opinion.

35. **Rather, we find it prudent to leave the legal question of whether a sufficient duty exists to our trial judges to decide on a case-by-case basis, at some point prior to trial, be it preliminary objections, summary judgment, or the like." Id..."Nonetheless, we would hold that some relationships, including some doctor-patient relationships, will involve**

**an implied duty to care for the plaintiff's emotional well-being that, if breached, has the potential to cause emotional resulting in physical harm".** Id.

36. The relationship between Plaintiffs and her personal bankers encompassed an implied duty to care for the Plaintiff's emotional well-being, as rarely is anything more frequently and vitally important in today's world then the personal bank account from which all household, consumer and other bills, all DEBIT/CREDIT charges, ATM cash withdrawals, etc., are paid and without which one could hardly get further then their doorstep.

37. This is especially true in this case, where Judson, Jay and Joe, Rideout here first had to cope with the unlawful and "Wrongful Death" of their father first only to have Wells Fargo, allow their mother (who was likely not in the right mind in the wake of husband's tragic death, and widowhood), to rob her son's together with Wells Fargo, of every penny the law and the Courts have found belonged to them.

38. All of this so Wells Fargo could reap profits and meet more insane sales goals.

39. Since WF violated their own account opening and maintenance, and usage, policies as well as Federal Law, they are a foreseeable victim of Bank's conduct, in failure to properly discharge such duties, as there existed a special

relationship between Plaintiff and her Bank of the kind contemplated by the Supreme Court of Pennsylvania in the above mentioned jurisprudence, where special duty is derived from at least four independent sources: 1) Bank's duty under EFTA, 2) Common law duty of good faith and dealing, 3) Fiduciary duty of care, 4) Duty under customer contract agreement, duty under Patriot and bank Secrecy Act, Duty under PA consumer protection law, not to engage in any activity the likely result of which is mistake and confusion. See Gregg v. Amerprise Financial Inc., A.3d 2021 WL 607486 (Pa. Feb. 17, 2021).

40. If the Court should fail to find that that a special duty of care existed by virtue of creation of the false accounts as set forth above, than at the very least it must find that at least once Rideout Bros reported the incident to WFs Loss Management and Wells Fargo communicated with them at lengths and was itself in possession of same documents that are attached to this Complaint and there was no doubt of wrongfulness of their omission and the resulting "robbery" of the settlement funds in which WF very much participated, the Court must find, in accord with the *Toney* holding, that such Loss Management investigation gave rise to special duty of care WF owed to Rideout Bros, under the circumstances of this case.

41. All of the above were breached by the Bank through actions and omissions described in this complaint, which breach obviously and objectively had the potential of deep emotional harm because of deprivation of significant funding, the only monies left for them from the exitance of their dad.

42. In conduct described above Wells Fargo intentionally or at least recklessly cashed Rideout Bros checks without their signature or any way to know what their signatures actually look like, through a fake account they established in their names in violation of all applicable laws and regulations cited above.

**WHEREFORE** Plaintiff's Pray for a Judgment to include all compensable damages, including pain and suffering monetary damages and other relief just and proper under the law, including punitive damages.

### COUNT III Intentional Infliction of Emotional Distress

43. Plaintiff repeats and realleges all previous paragraphs as if fully stated herein at length.

44. The same conduct and pattern set forth above also constitutes Intentional Infliction of Emotional Distress.

**WHEREFORE** Plaintiff's Pray for a Judgment to include all compensable damages, including pain and suffering monetary damages and other relief just and proper under the law, including punitive damages.

## COUNT IV NEGLIGENCE

45. Plaintiff repeats and realleges all previous paragraphs as if fully stated herein at length.

46. The same conduct and pattern set forth above also constitutes Negligence.

47. WF recent misconduct and the fines by the authorities stemming from the highly illegal schemes, established that WF owes a duty of care to public at large not to create fake accounts under random folks names without their knowledge and permission.

48. In other words Wells Fargo owes an ORP duty of care to general public to adhere to banking laws and regulation which prohibit them from establishing fake accounts, without knowledge, permission or authorization by the authorized users.

49. If the Court should fail to find that that a duty of care existed by virtue of creation of the false accounts as set forth above, than at the very least it must find that at least once Rideout Bros reported the incident to WFs Loss Management and Wells Fargo communicated with them at lengths and was itself in possession of same documents that are attached to this Complaint and there was no doubt of wrongfulness of their omission and the resulting "robbery" of the settlement funds in which WF very much participated, the

Court must find, in accord with the *Toney* holding, that such Loss Management investigation gave rise to a duty of care WF owed to Rideout Bros, under the circumstances of this case, when there was at least probable cause of wrongdoing involving deprivation of $62,470, else the entire structure is meaningless, and WF will force every future victim to hire a lawyer and file a lawsuit.

50. There are two distinct factual scenario opportunities, where the Court may find WF owed a duty to Ridout Bros: 1) at the onset of the wrongdoing, when they knew they had opened accounts for persons they had never seen in person, nor did they have their signatures, but did eagerly accept their $62,470, via drafts titled only and solely in Fee Simply, than cashing all those out a person whose name did not appear on any of the checks; and or 2) When aggravated individuals reported this fraud to WF who than investigated and must have found substantiated allegations but decided not to do anything about it.

51. WF breached this duty in a blunt and self serving manner, under the same pattern of misconduct they have adhered to in years prior as shown above, so that Rideout Bros were at all times relevant hereto, foreseeable victims of such misconduct.

52. As a direct and proximate conduct of WF Plaintiffs suffered tremendous monetary and emotional as well an non pecuniary loss.

**WHEREFORE** Plaintiff's Pray for a Judgment to include all compensable damages, including pain and suffering monetary damages and other relief just and proper under the law, including punitive damages, and attorney fees. Plaintiffs demands a trial by jury as to all issues so triable.

### PRAYOR FOR RELIEF

**WHEREAFORE** Plaintiff request a judgment in their favor for all damages due under the law, and submit to jury all issues so triable.

Enclosures: **Exhibit A, B,C,D, E.**

Respectfully Submitted

**LAW OFFICES OF PREDRAG FILIPOVIC, ESQ**
1635 Market Street, Suite 1610
Philadelphia, PA 19103
Tel: 267-265-0520; 215-974-7744
Email: PFesq@ifight4justice.com
**Attorneys for the Plaintiffs**

www.StopRipoff.com

## **VERIFICATION**

We, Judson, Jay, and Joe Rideout, have read the Complaint and certify that all the facts therein pertaining to our case, are accurate and true and documents attached true and accurate copies of what we are in possession of, to the best of our knowledge information and belief, and we make this statement subject to penalties of unsworn, falsifications to authorities.

_____JUDSON__*Judson Rideout*_____; DATE__7/22/2021_____

_____JAY_____*Jay Rideout*_____; DATE___7/22/2021_____


_____JOSEPH___*Joseph Rideout*_____; DATE____7/22/2021_____