**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JUDSON A. RIDEOUT, *et al.*** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO.  21-3326** |
| | : | |
| **WELLS FARGO BANK N.A.** | : | |

## <u>MEMORANDUM</u>

**KEARNEY, J.**                                                                            **October 21, 2021**

Three brothers claim Wells Fargo Bank allowed their mother to fraudulently open bank accounts naming the brothers as joint bank account owners without their knowledge. Mother then allegedly deposited checks payable to them in the fraudulently opened accounts. She then withdrew the same funds.  The brothers later found out, told Wells Fargo of their mother's conduct, and asked it to replace the money. Wells Fargo agreed to investigate and repay if warranted. It did not do so. We do not know what happened between the brothers and their mother to cause or resolve the problem.  But the three brothers decided to sue Wells Fargo for damages but failed to do so timely under the Pennsylvania Commercial Code. So they now claim Wells Fargo violated Pennsylvania's Unfair Trade Practice and Consumer Protection Law, and committed fraud, negligent infliction of emotional distress, intentional infliction of emotional distress, and negligence. We dismiss the brothers' unfair trade practice claims without prejudice as they do not allege standing. We dismiss their fraud claim because the brothers do not allege justifiable reliance on Wells Fargo's plead conduct. We dismiss the brothers' negligent and intentional infliction of emotional distress claims. We also dismiss the brothers' claims of negligence.  We grant the brothers a third opportunity to timely plead claims consistent with Rule 11.

## I.  Alleged Facts

Judson A. Rideout, Jay J. Rideout, and Joseph M. Rideout are brothers.[1] Their father died in a motor vehicle accident in 2015.[2] Their mother, Elenore Rideout, sued for wrongful death.[3] The defendant settled by, among other things, paying each brother a settlement check for $20,863.03.[4] The mother's lawyer mailed the checks to the brothers' permanent address on file where their mother resided.[5]

Mother deposited their settlement checks in one or more joint accounts at Wells Fargo without the brothers' knowledge.[6] On one account, Mother listed herself as primary joint owner, and Jay Rideout and Judson Rideout as secondary joint owners.[7] She listed her address as the mailing address.[8] Wells Fargo mailed the monthly statements there.[9] Wells Fargo did not seek the brothers' consent to open the accounts, and the brothers did not consent to opening accounts in their names.[10]

Mother deposited the brothers' settlement checks into the accounts after she forged their signatures.[11] Wells Fargo failed to obtain identification, sample signatures, or direct contact information from the brothers when it opened the account or accounts.[12] Mother then withdrew the brothers' settlement funds.[13] The brothers never saw the money.[14]

The brothers later learned of the checks and their Mother's conduct. They reported this information to Wells Fargo's Loss Management, reporting "they got dupped and never received a penny of the monies stemming to them from the settlement of their Father's wrongful death," and their mother "laundered" the checks made out to each of them through a Wells Fargo "account which was fraudulently, and negligently opened and maintained."[15] Wells Fargo opened a case on the "incident(s)."[16] The Wells Fargo Loss Management team "made statements to the [brothers] . . . that lead [*sic*] them to believe, that [Wells Fargo] would refund their monies if they find facts [the brothers] presented to be substantiated."[17] Wells Fargo Loss Management "made many

statements to [the brothers], regarding this incident, that were intended to lead them to believe" they would be refunded the money if the investigation substantiated the brothers' allegations of the incident(s).[18]

Wells Fargo Loss Management concluded they "lacked documentary or even film media evidence of [the brothers'] authentic authorization to deposit their settlement checks and or [*sic*] withdraw monies from those deposits."[19] Wells Fargo "agreed that they had none of the documents or proof of account ownership for any of [the brothers]," but "nevertheless allowed deposits and withdrawal of entire sums of settlement through such delinquent accounts."[20] Wells Fargo did not return the brothers' money.[21]

The brothers lost settlement funds of $62,470.[22] They also claim losing investment opportunities, educational goals, and other pecuniary losses as well as humiliation, anxiety, loss of sleep, and loss of life's enjoyment.[23]

## II.    Analysis

The brothers sued Wells Fargo for violating Pennsylvania's Unfair Trade Practice and Consumer Protection Law ("Trade Practices Law"), fraud, negligent infliction of emotional distress, intentional inflictions of emotional distress, and negligence.[24] They do not sue their mother. They also do not sue under the Pennsylvania Commercial Code.[25]

Wells Fargo moves to dismiss all claims for failure to state a claim.[26]  The brothers oppose Wells Fargo's motion arguing they plead negligence, fraud, negligent infliction of emotional distress, intentional infliction of emotional distress, and violations of the Trade Practices Law.

### A.    The brothers do not state a claim under Pennsylvania's Trade Practices Law.

Wells Fargo moves to dismiss the Trade Practices Law claim because the brothers fail to allege: (1) they purchased or leased goods or services; (2) deceptive conduct; and (3) justifiable

reliance.[27] The brothers oppose the motion to dismiss arguing they sufficiently plead all required elements.

The Pennsylvania General Assembly prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."[28] "A private cause of action exists under the [Trade Practices Law] where a person 'purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of' a defendants use . . . of an unlawful practice prohibited by the statute."[29] The brothers must allege: "(1) they purchased or leased goods or services primarily for a personal, family, or household purpose; (2) they suffered an ascertainable loss of money or property; (3) the loss occurred as a result of the use or employment by a vendor of a method, act, or practice declared unlawful by the [Trade Practices law]; and (4) the consumer justifiably relied upon the unfair or deceptive business practice when making the purchasing decision."[30]

Wells Fargo argues the brothers fail to sufficiently plead they purchased or leased a good or service, deceptive conduct, and justifiable reliance. We agree with Wells Fargo and dismiss the brothers' Trade Practices Law claim. Due to the brothers' continued reliance on and mischaracterization of the Pennsylvania Supreme Court's opinion in *Gregg v. Ameriprise Financial, Inc.*,[31] we address the justifiable reliance prong first.

### 1.     The brothers do not allege justifiable reliance.

Wells Fargo argues the brothers fail to allege justifiable reliance because: (1) they fail to allege a representation by Wells Fargo before or at the time of their mother's theft; (2) they cannot allege justifiable reliance because they allege Wells Fargo acted without their knowledge or permission; and (3) they allege they reported the incident to Wells Fargo "immediately," which

forecloses justifiable reliance. The brothers argue the Trade Practices Law is now a strict liability statute so they need not allege justifiable reliance in light of the Pennsylvania Supreme Court's holding in *Gregg*; if they prove a fiduciary or confidential relationship, they need not allege justifiable reliance; or alternatively, if they have to plead justifiable reliance, they do adequately plead it.[32] The brothers must allege justifiable reliance to state a claim, and they fail to do so. We dismiss their Trade Practices law claim.

The Pennsylvania Supreme Court recently clarified what a plaintiff must allege for "deceptive conduct" under the statute's catch-all provision.[33] In doing so, the court reiterated the justifiable reliance requirement: "Section 201-9.2 creates a causation element, which requires a private plaintiff to demonstrate justifiable reliance . . . *Regardless of which unfair method of competition a plaintiff challenges in a private cause of action, therefore, Section 201-9.2 requires the plaintiff to establish justifiable reliance.*"[34] The court then detailed how Pennsylvania courts interpreted the "catch-all" provision before the General Assembly amended the statute in 1996, and asserted "[w]ith this background in mind, we confront the plain language of the catch all provision to determine, whether, as the Superior Court held, a strict liability standard applies to the Greggs' [Trade Practices Law] claim."[35] The court held "under the plain meaning of the statute, deceptive conduct during a consumer transaction that creates a likelihood of confusion or misunderstanding and upon which the consumer relies to his or her financial detriment does not depend upon the actor's state of mind. Liberally construing the [Trade Practices Law] as we must, the amended language places the duty of compliance with the [Trade Practices Law] on commercial vendors, without regard to their intent. Without a state of mind requirement, the amended catch-all provision fairly may be characterized as a strict liability offense."[36] While a plaintiff need not allege the defendant acted with intent to deceive or the defendant deceived the

plaintiff, the Pennsylvania Supreme Court in *Gregg* did not eradicate the other elements—including causation—from the Trade Practices Law.[37]

Judge Beetlestone recently confronted, and rejected, the very same argument the brothers offer today.[38] In *Mount*, the plaintiff sued for violation of the Trade Practices Law under the "catch-all" provision for deceptive conduct.[39] The defendants moved to dismiss arguing the plaintiff did not plausibly allege justifiable reliance, and the plaintiff countered justifiable reliance is no longer required in light of *Gregg*.[40] Judge Beetlestone expressly rejected the plaintiff's argument relying on the same interpretation of *Gregg*.[41] Judge Beetlestone found the Pennsylvania Supreme Court in *Gregg* reaffirmed the causation requirement, quoting the court: "regardless of which unfair method of competition a plaintiff challenges in a private cause of action . . . Section 201-9.2 requires the plaintiff to establish justifiable reliance."[42] The brothers must allege justifiable reliance.[43]

The brothers next appear to quote from a case from the Pennsylvania Superior Court—although they do not put the text in quotes or otherwise elaborate on the seemingly quoted portion—to argue if they allege a confidential relationship with Wells Fargo creating a fiduciary duty, they need not otherwise prove or allege justifiable reliance because reliance is presumed based on the nature of the relationship. In *Basile v. H & R Block, Inc.*, the Pennsylvania Superior Court addressed whether the plaintiffs had a confidential relationship with H&R Block creating a fiduciary relationship.[44] The court in *Basile* found the plaintiffs alleged sufficient facts to state a prima facie case of a confidential relationship but remanded to the trial court.[45] In doing so, it held "the obligations of a defendant bound by a fiduciary duty relieve the plaintiff of the burden to prove reliance in claims it asserts for violation of the [Trade Practices Law] . . . if upon remand the Plaintiffs succeed in demonstrating a confidential relationship with Block, their reliance,

inherent in a finding of fiduciary duty, will be presumed for purposes of claims under the [Trade Practices Law]."[46]

The brothers do not allege a fiduciary relationship with Wells Fargo under the confidential relationship theory. "Where no fiduciary duty exists as a matter of law, Pennsylvania courts have nevertheless long recognized the existence of confidential relationships in circumstances where equity compels that we do so . . . We have explained that a confidential relationship 'appears when the circumstances make it certain the parties do not deal on equal terms, but, on the one side there is an overmastering influence, or, on the other, weakness, dependence or trust, justifiably reposed.'"[47] "A fiduciary duty will not be imposed in an ordinary business relationship simply because one party possesses superior knowledge or expertise."[48]

The brothers allege they had no relationship with Wells Fargo. They instead allege their mother fraudulently opened an account (or accounts) in their name to "launder" their money. They allege they never went to the bank, never went to the branch, and they did not authorize the accounts. They do not allege they are or were Wells Fargo customers before this incident. They allege no relationship with Wells Fargo as it relates to the opening of the accounts. They then allege they contacted Wells Fargo's Loss Management Department to investigate their mother using fraudulent accounts to steal their money. They now argue we can infer the brothers provided Wells Fargo "otherwise confidential and privileged information about the [brothers], the likes of which they do not have on other demand deposit customers of the Bank, nor would have a legal way to obtain it" during the investigation.[49] We disagree. The brothers do not allege anything they told Wells Fargo; they only allege what Wells Fargo told them – "encouraging statements" leading them to believe if Wells Fargo substantiated their complaint, it would refund the money their mother stole. This allegation does not support an inference the brothers provided "confidential and

privileged information" to Wells Fargo. Nor would it matter even if they did allege they provided this information. Alleging participation in a usual business function—a loss investigation—with a bank with no other contacts does not transform an ordinary business relationship into a fiduciary, confidential relationship. The brothers do not allege facts supporting their theory they need not allege justifiable reliance because of a fiduciary relationship between the brothers and Wells Fargo.

The brothers alternatively argue they sufficiently plead justifiable reliance.[50] We disagree. The brothers allege their mother opened bank account(s) without their knowledge. They do not allege dealings with Wells Fargo before their mother opened the accounts without their knowledge. They do not allege how they could justifiably rely on something they knew nothing about. They also fail to allege facts they justifiably relied on Wells Fargo's statements during the loss investigation nor do they allege facts they relied on the statements to their financial detriment.[51] The brothers do not allege Wells Fargo made specific statements beyond conditional assurances they may receive refunds if the bank verifies the facts surrounding their mother's account opening and withdrawals.[52] They also do not allege they committed specific acts in reliance upon Wells Fargo's statements on refunding nor do they allege they suffered further loss by relying—if they did in fact rely—on any statements from Wells Fargo during the loss investigation. They do not "*explicitly* plead their reliance on" specific representations or policies of Wells Fargo.[53]

The brothers also allege facts undercutting their justifiable reliance argument, including "immediately report[ing] the incident to [Wells Fargo] Loss Management" after they "realized their predicament."[54] Plaintiffs do not sufficiently plead justifiable reliance where they "went to work right away to correct this problem."[55] In *Pine v. Dep't of Educ.*, the plaintiff sued the United States Department of Education and its debt collector after they garnished her wages to collect on a defaulted student loan twenty-five years after she left the university where she allegedly incurred

the loans.[56] The debt collector moved to dismiss her Trade Practices Law claim.[57] We found the plaintiff failed to plead justifiable reliance on the debt collector's deceptive debt collection because, during oral argument, she "claim[s] she went to work right away to correct this problem. [Therefore,] [s]he has not plead how she relied on this allegedly false statement."[58] Our previous finding applies today. As Judge Conner found, "[r]eliance means that the [plaintiffs] took, or failed to take, some action in response to defendants' allegedly wrongful conduct."[59] The only action the brothers allege they took is reporting the account(s) and money "laundering" to Wells Fargo Loss Management. Their only action sought to correct their mother's wrongful conduct, and thus they did not plead they justifiably relied—to their detriment—on Wells Fargo's conduct to open the accounts.[60]

The brothers fail to allege justifiable reliance. We must dismiss their claim under the Trade Practices Law.

### 2.        The brothers do not allege they purchased or leased a good or service.

Wells Fargo argues the brothers did not purchase or lease a good or service under the Trade Practices Law claim, relying on Chief Judge Sanchez's opinion in *Hamburg v. Santander Bank*.[61] The brothers argue *Hamburg* is factually and legally distinguishable after the Pennsylvania Supreme Court's decision in *Gregg*.[62] They further argue: they are in a confidential, fiduciary relationship with Wells Fargo, giving them standing; they allege new facts purportedly supporting an inference they are customers of Wells Fargo purchasing or leasing a service, none of which are alleged in the first amended Complaint; and strict privity of contract is not required to establish the purchase or lease of a good or service. We agree with Wells Fargo the brothers fail to allege they purchased or leased a good or service and lack standing like the plaintiff in *Hamburg*.

In *Hamburg*, the plaintiff's then-estranged wife opened a "fraudulent joint account" with her and the plaintiff's name on it, deposited their jointly issued tax-refund check in it with only her signature endorsement, and then transferred all of the money into her own personal account without plaintiff's knowledge.[63] Before Chief Judge Sanchez ruled on the parties' motions for summary judgment, the state court found the estranged wife entitled to the tax refund check "as an interim distribution against her final share of equitable distribution."[64] In discussing the plaintiff's Trade Practices Law claim against the bank, Chief Judge Sanchez found the claim failed because: "[plaintiff] has no standing to bring the cause of action under the [Trade Practices Law] because he has not alleged he 'purchase[d] or lease[d] goods or services primarily for personal, family, or household purposes' from the Bank . . . [and], as explained above, [plaintiff] has suffered no ascertainable loss as a result of the Bank's conduct [because he's not entitled to the refund check per the state court order.]"[65] The brothers attempt to distinguish Chief Judge Sanchez's analysis in *Hamburg* because the state court issued an order finding the estranged husband not entitled to the fraudulently cashed check in the fraudulently opened joint account. We are not persuaded this fact distinction guided Chief Judge Sanchez's finding the plaintiff failed to plead he purchased or leased a good or service in nearly the same actual factual scenario as we confront. Chief Judge Sanchez instead cited three reasons—one of which addressed his failure to plead ascertainable loss since the money did not belong to him, and two of which did not address the fact the money did not belong to the plaintiff at all. We are similarly unpersuaded the Pennsylvania Supreme Court in *Gregg* disturbed the requirement the plaintiff purchase or lease a good or service to state a claim under the Trade Practices Law.[66] Chief Judge Sanchez's analysis in *Hamburg* persuades us the brothers lack standing to bring their Trade Practices Law claim.

10

We previously rejected the brothers' argument they allege a confidential relationship with Wells Fargo. They do not, and we need not reiterate our reasoning here. Even if we did find a confidential relationship, the brothers fail to show how the "confidential relationship" would satisfy the "purchase or lease a good or service" prong of the Trade Practices Law claim.

We also will not consider new facts raised in briefing suggesting Wells Fargo possibly reported the deposits to the Internal Revenue Service, which the brothers now try to argue but do not allege.[67] We do not consider new facts alleged in response to a motion to dismiss.[68] We are similarly unpersuaded by the brothers' argument Wells Fargo sending account statements with two of the three brothers' names on it establish they purchased or leased a good or service. They allege the exact opposite: they had no involvement in the opening of the accounts; they did not appear at the bank to open the accounts; they did not know of the accounts; they did not authorize or consent to the accounts; they did not deposit or withdraw any money from the accounts. Wells Fargo listed the brothers on the account statement because their mother fraudulently opened the account in their name. The brothers' allegations are contrary to their argument.

We lastly reject the brothers' argument they need not be in strict privity with Wells Fargo to maintain a claim under the Trade Practices Law because they still must be a purchaser or lessor of a good or service and they are not. The brothers are correct the Pennsylvania Supreme Court held strict privity is not required under the Trade Practices Law, allowing a condominium association to sue the company supplying the roof warranty even though it did not purchase the roof directly from them.[69] But the condo association still purchased the roof—just not from the company it sued.[70] While strict privity is not required, the plain text of the statute requires the plaintiff be a purchaser or lessor of a good or service, and this requirement has not been changed.[71] The brothers do not allege they purchased or leased a good or service.

11

### 3.     The brothers do not allege deceptive conduct.[72]

Wells Fargo further argues the brothers cannot state a Trade Practices Law claim because they fail to allege deceptive conduct relating to the opening of the accounts.[73] They do not argue the brothers fail to allege deceptive conduct in the fraud investigation. We only address the argument relating to deceptive conduct in opening the accounts.

The General Assembly, through the Trade Practices Law, prohibits "engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding."[74] As the Pennsylvania Superior Court recently observed, "[t]he test for deceptive conduct, as defined by the *Gregg* court, is 'whether the conduct has the tendency or capacity to deceive.'"[75] "[T]he vendor's state of mind as to either the truth or falsity of the representation or the effect that the misrepresentation will have on the consumer is irrelevant.'"[76] The brothers do not allege a relationship with Wells Fargo before their mother opened the account(s) without their permission. They do not allege Wells Fargo spoke to them about the accounts. They do not allege Wells Fargo told them anything about the accounts when their mother opened them. They allege the opposite: their mother opened the accounts without their permission. The brothers do not allege deceptive conduct relating to opening the account(s).

We dismiss the brothers' claim under the Trade Practices Law without prejudice.

### B.     The brothers do not state a claim for common law fraud.

Wells Fargo moves to dismiss the brothers' claim for common law fraud because they do not plead misrepresentations made during the account opening nor do they plead with particularity their fraud claim based on Wells Fargo's statements during the loss investigation.[77] The brothers maintain they plead their fraud claim with particularity and suffered the harm needed to sustain the fraud claim based on statements during the loss investigation.[78] We disagree.

The brothers must plead: "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) resulting injury was proximately caused by the reliance."[79] "All allegations of fraud must be plead with particularity."[80] "Rule 9(b) may be satisfied by describing 'the circumstances of the alleged fraud with precise allegations of date, time, or place, or by using some means of injecting precision and some measure of substantiation into [the] allegations of fraud.'"[81] "Stated another way, the plaintiff must plead the who, what, when, where, and how of the fraud."[82]

The brothers allege Wells Fargo committed fraudulent acts in two different circumstances: (1) by "intentionally or at least recklessly cash[ing] [the brothers'] checks without their signatures" and thus "orchestrat[ing] [an] illegal account opening scheme"; and (2) "fraud[ulently]" investigating the brothers' claims.[83] But the brothers do not allege Wells Fargo made a representation to them when their mother opened the account(s). The brothers allege they did not interact with Wells Fargo and did not enter a transaction with the bank.[84] They allege their mother opened accounts in their names without their permission.[85] The brothers do not plead a fraud claim based on Wells Fargo opening the bank accounts.[86]

The brothers also do not allege Wells Fargo misrepresented a fact during the Loss Management investigation intending to mislead the brothers into justifiably relying on the misrepresentation.[87] Nor do they plead their fraud claim with particularity.[88] The brothers allege the Wells Fargo Loss Management investigation "and any and all encouraging statements they made to [the brothers], were made, under false pretenses of good faith effort to remedy the wrong, when in fact the entire 'investigation' . . . was but a self-serving sham."[89] They allege Wells Fargo

falsely investigated their claims to (1) gain information from the brothers to maintain favorable public relations, (2) "pin [the brothers] against their [m]other" while remaining an "innocent p[e]acemaker," and (3) "waste valuable time" to run out the statute of limitations of potential tort claims.[90] The brothers allege Wells Fargo provided "a false pretense of forthcoming compensation."[91]

The brothers' fraud claim is not plead with particularity. They do not allege a misrepresentation. They broadly allege Wells Fargo made "statements" leading them to believe they would receive a refund if Wells Fargo substantiated their claims.[92] They broadly allege Wells Fargo made the statements "during the loss investigation," but the date or general time of the loss investigation is not plead. They simply do not allege "who, what, when, where, and how of the fraud." The brothers' fraud claim fails.

The brothers also fail to plead justifiable reliance necessary to proceed on a fraud claim. They do not allege they justifiably relied on Wells Fargo's reassuring statements in the claim investigation process causing harm to them because of reliance.[93] Nor do they allege they committed specific acts in reliance on Wells Fargo's statements on refunding.[94] They do not plead anything they did or did not do as a result of Wells Fargo's representation if it substantiated the brothers' claims, it would refund their money. The brothers argue because they allege Wells Fargo "waste[d] valuable time off of the fairly short 2 year statute of limitations clock for Rideout Bros most potent claims in tort," we can "reasonably infer[]" that "cooperating with the Wells Fargo Investigation" meant not filing a lawsuit against them during the pendency of the investigation.

This is simply not the case. The brothers provide an exhibit of an account application and deposit slip from 2016, but they do not allege: (1) when they discovered their mother took their money; (2) when they contacted the loss department, other than "immediately" after they

discovered this; (3) how long the loss investigation lasted; or (4) the date Wells Fargo told them they were not receiving refunds. We cannot reasonably infer Wells Fargo requesting cooperation with the claim *they filed* intended the brothers to not file a lawsuit during the pendency of the investigation.

We need not address whether the brothers suffered a harm arising from Wells Fargo's conduct. We dismiss the brothers' claim for fraud without prejudice.

### C.  The brothers do not state a claim of negligent infliction of emotional distress.

Wells Fargo moves to dismiss the brothers' claim of negligent infliction of emotional distress because it owed no contractual or fiduciary duty to them and they fail to allege harm.[95] We agree with Wells Fargo.

The brothers must allege one of the following four elements for negligent infliction of emotional distress: "(1) the defendant had a contractual or fiduciary duty toward [them]; (2) Plaintiff suffered from a physical impact; (3) Plaintiff was in a 'zone of danger' and at risk of immediate physical injury; or (4) Plaintiff had a contemporaneous perception of tortious injury to a close relative."[96] "A plaintiff who alleges negligent infliction of emotional distress must suffer immediate and substantial physical harm."[97] The brothers rely on the Pennsylvania Supreme Court's decision in *Toney v. Chester County Hospital*[98] to argue they are in a "special relationship" with Wells Fargo and therefore state a claim. We disagree.

The Pennsylvania Supreme Court in *Toney* issued an evenly-split plurality decision affirming the superior court's finding the plaintiff can state a claim for negligent infliction of emotional distress under a "special relationship" theory; thus, while persuasive, *Toney* is not binding.[99] Even if we were bound by *Toney*, the brothers fail to state a claim because they do not allege a contractual, fiduciary, or special relationship with Wells Fargo.

The Pennsylvania Supreme Court in *Toney* found "the Superior Court's development of the theory of [negligent infliction of emotional distress] liability based on preexisting fiduciary or contractual relationship is flawed in that no decision has fully considered or officially adopted the theory, despite repeated citations to it. Accordingly, we must determine whether [negligent infliction of emotional distress] liability should be extended to such cases."[100] The court continued, "we are faced with the undeniable truth that some negligent breaches of duties in preexisting relationships will give rise to severe emotional distress that should be compensable . . . However, equally true, is the fact that not all breaches of duties should result in compensable emotional distress claims."[101] After reviewing legal commentary and decisions from other jurisdictions, the court concluded a justification "exists to extend [negligent infliction of emotional distress] liability to a subset of cases involving preexisting relationships. In so doing, we consider the standard elements of negligence claims: duty, breach, causation, and damages . . . [but] [a]s with other states, we find it prudent to limit the reach of this [negligent infliction of emotional distress] claim to preexisting relationships involving duties that obviously and objectively hold the potential of deep emotional harm in the event of a breach."[102] "[T]he special relationships must encompass an implied duty of care for the plaintiff's emotional well-being. The potential emotional harm must not be the type that a reasonable person is expected to bear."[103] The court found this issue to be a "legal question . . . [for] our trial judges to decide on a case-by-case basis" but concluded "relationships involving life and death fall within this category" as well as "doctor-patient relationships."[104] The court in *Toney* also found "severe emotional distress can arise equally from situations without any physical impact . . . [and] [a] plaintiff asserting a special relationship [negligent infliction of emotional distress] cause of action absent physical injury, however, must

16

still demonstrate the genuineness of the alleged emotional distress, in part, by proving the element of causation."[105]

Courts reviewing the same issues after the Pennsylvania Supreme Court's split decision in *Toney* reject negligent infliction of emotional distress claims based on employer-employee relationships, lender-borrower relationships, casino-patron relationship, and contractor-owner relationships.[106] Our inquiry here is whether the brothers are in a contractual, fiduciary, or special relationship with Wells Fargo. The brothers are not in a contractual relationship as they admit no involvement in opening the account(s) and did not permit their mother to open the accounts in their name. The brothers do not allege a fiduciary relationship with Wells Fargo.

We similarly reject a "special relationship" permitting recovery for negligent infliction of emotional distress based on the plead facts. Our inquiry for a claim based on a "special relationship" is whether the relationship between the brothers and Wells Fargo is one "encompassing an implied duty of care for the plaintiff's emotional well-being" and "involving duties that obviously and objectively hold the potential of deep emotional harm in the event of a breach."[107] All the brothers' allegations cut specifically against a finding of a special relationship. The brothers allege Wells Fargo undertook a loss investigation, placing them in a special relationship with Wells Fargo. Merely undertaking a loss investigation into purported stolen and/or laundered monies with individuals who claim they are not customers of the bank does not create a special relationship. Nor does the fact Wells Fargo purportedly knew the money came from a wrongful death settlement lawsuit change our finding. This is an ordinary business relationship, not a relationship "involving duties that obviously and objectively hold the potential of deep emotional harm in the event of a breach."

The brothers also allege Wells Fargo entered a special relationship based on duties under "1) Bank's duty under [Electronic Funds Transfer Act], 2) Common law duty of good faith and dealing, 3) Fiduciary duty of care, 4) Duty under customer contract agreement, duty under Patriot and bank Secrecy Act, Duty under PA consumer protection law" to argue Wells Fargo's conduct relating to the opening of accounts is actionable under a negligent infliction of emotional distress claim.[108] This is not a well-pleaded fact we must accept as true; it is a legal conclusion.[109] The brothers do not argue how the cited banking statutes create a duty. We will not make the argument for them, but we note our colleagues consistently find the Patriot Act does not create a duty.[110] Even if Wells Fargo owed a duty under any of these theories, the brothers do not plead a relationship "involving duties that obviously and objectively hold the potential of deep emotional harm in the event of a breach."

We dismiss the brothers' claim for negligent infliction of emotional distress without prejudice.

**D.    The brothers do not state a claim for intentional infliction of emotional distress.**

Wells Fargo also moves to dismiss the brothers' claim of intentional infliction of emotional distress because they do not plead extreme and outrageous conduct.[111] The brothers argue they adequately plead Wells Fargo's conduct is extreme and outrageous.[112] Our Court of Appeals instructs intentional infliction of emotional distress requires "extreme and outrageous conduct [that] intentionally or recklessly cause[s] plaintiff severe emotional distress."[113] The Pennsylvania Supreme Court instructs "the conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society."[114] "Cases which have found a sufficient basis for a cause of

action of intentional infliction of emotional distress have had [*sic*] presented only the most egregious conduct."[115]

The brothers do not allege Wells Fargo committed outrageous conduct. They allege Wells Fargo failed to verify the brothers' identity upon their mother opening a joint account, which enabled her to deposit and cash checks with their forged signatures.[116] And they allege Wells Fargo opened an investigation into their mother's conduct, stated it would provide a refund if their claims were substantiated, and Wells Fargo did not provide a refund. [117]

This case is similar to the facts presented to Judge Baer in *Jones v. Commerce Bancorp, Inc.*, where plaintiff held an account with a bank as the account's sole authorized signor.[118] Plaintiff claimed the bank (1) authorized several withdrawal slips containing plaintiff's forged signature, (2) opened a separate fraudulent bank account in plaintiff's name, and (3) deposited a counterfeit insurance check into the separate account.[119] The bank "credited the fraudulently withdrawn funds back to plaintiff[]" but did not close plaintiff's account as instructed.[120] The plaintiff alleged the bank "'caused the theft' of her identifying information" and caused a monthly business insurance premium to be canceled for non-payment.[121]

Judge Baer found "[a]t most, [the bank] negligently failed to prevent the theft of plaintiff's identifying information, and/or failed to prevent certain individuals from making unauthorized withdrawals from plaintiff's account."[122] Judge Baer also found plaintiff's allegation the bank "was not adequately responsive to her inquiries after the incident . . . d[id] not constate the extreme conduct necessary to plead a tort predicated on emotional harm."[123]

The brothers' allegations Wells Fargo failed to prevent their mother from fraudulently opening account(s) and depositing and withdrawing their settlement money do not rise to the standard required of intentional infliction of emotional distress claims under Pennsylvania law.

Nor do their allegations Wells Fargo opened an investigation, conducted the investigation, and determined it did not owe them a refund constitute extreme and outrageous conduct.

We dismiss the brothers' intentional infliction of emotional distress claim without prejudice.

### E.     The brothers do not state a claim for negligence.

The brothers allege Wells Fargo acted negligently in three distinct ways: (1) by opening account(s) in their names without verifying their identifications; (2) allowing their mother to deposit and withdraw $62,470 in unauthorized checks in their names, and (3) by failing to refund or otherwise compensate them after their investigation into their claims.[124] The brothers also allege Wells Fargo negligently failed to adhere to the USA Patriot Act and other banking laws and regulations preventing banks from establishing unauthorized accounts.[125] They do not allege Wells Fargo deviated from generally accepted banking principles stating a plead standard of care in the banking industry. To state a negligence claim under Pennsylvania law, the brothers must allege: "(1) a duty or obligation recognized by law; (2) a breach of that duty; (3) a causal connection between the defendant's breach of duty and the plaintiff's injury; and (4) actual damage."[126]   The brothers do not plead a negligence claim.

### 1.     The brothers' negligence claim arising from Wells Fargo's processing of unauthorized checks is barred by the Pennsylvania Commercial Code.

Wells Fargo argues the brothers' negligence claim arising from their mother's unauthorized check deposit and withdrawal is "displaced and barred by the Pennsylvania Commercial Code."[127] We agree.

"The Pennsylvania Commercial Code regulates negotiable instruments and is intended to simplify and standardize commercial transactions."[128] "The Code displaces parallel common law

claims (1) when it supplies a comprehensive remedy and (2) where 'reliance on the common law would thwart the purposes of the Code.'"[129] Wells Fargo argues the Code provides a "comprehensive remedy" for the brothers' negligence claim under Section 3420.[130] Wells Fargo also argues allowing the brothers to bring a negligence claim would "thwart the purpose of the [Code]" because brothers' claims under the Code are now time-barred.[131] Allowing the brothers to "recast their [Pennsylvania Commercial Code] claim as a negligence claim" would impermissibly avoid the Code's effects. The brothers seem to concede this is true, and instead argue "the [Code] does not preempt the [Trade Practices Law], and [Wells Fargo] raises no valid arguments against the duty owed to the brothers stemming from undertaking of loss management 'investigation.'"[132]

> The Pennsylvania General Assembly, in section 3420 of the Commercial Code, provides:
>
> The law applicable to conversion of personal property applies to instruments. An instrument is also converted if it is taken by transfer, other than a negotiation, from a person not entitled to enforce the instrument or a bank makes or obtains payment with respect to the instrument for a person not entitled to enforce the instrument or receive payment.[133]

The official comments to section 3420 offer further guidance:

> The second sentence of Section 3-420(a) states that an instrument is converted if it is taken by transfer other than a negotiation from a person not entitled to enforce the instrument or taken for collection or payment from a person not entitled to enforce the instrument or receive payment. This covers cases in which a depositary or payor bank takes an instrument bearing a forged indorsement.[134]

Wells Fargo argues section 3420 provides a remedy for the brothers' claim against Wells Fargo, which bars its current negligence action. We agree.

In *Gress v. PNC Bank, National Association*, Judge Pollak held "[section] 3420 . . . displaces negligence actions that are based on wrongfully paying a negotiable instrument to 'a person not entitled to enforce the instrument or receive payment.'"[135] Judge Pollak found the

provision's "intended purpose is to provide exclusive regulations to govern the unauthorized payment of negotiable instruments."[136] In *Gress*, plaintiffs alleged a bank "wrongfully paid" their check to someone other than themselves.[137]

We are persuaded by Judge Pollak's analysis. The brothers similarly allege Wells Fargo wrongfully allowed their mother to cash a forged settlement check.[138] The brothers' negligence claim arising from the unauthorized payment of checks is displaced by the Commercial Code because section 3420 provides a remedy for endorsement of forged instruments such as forged checks.

> ### 2. The brothers do not state a negligence claim arising from Wells Fargo's failure to verify their identification upon mother opening the account in violation of banking laws.

Wells Fargo argues the brothers fail to plead a claim for negligence because they fail to plead damages as the Commercial Code prohibits recovery of the alleged monetary loss and because they cannot premise their negligence claim on the Bank Secrecy Act provisions in the Patriot Act.[139] The brothers offer no opposition to this argument.[140]

Wells Fargo offers no cite to the Commercial Code or other authority supporting its argument the Commercial Code displaces the brothers' negligence claim for failing to verify identity when opening the account(s). It instead seems to rely on the issue of damages to argue because the purported loss of settlement funds resulted from the cashing of forged checks, the Commercial Code displaces the negligence claim. We interpret Wells Fargo's argument as one of causation—the mere opening of the account(s) without verification did not cause the brothers' loss, their mother's cashing of forged checks did. Whether the mother could have cashed the forged checks without Wells Fargo opening the unauthorized accounts without verifying account holder identities cannot be decided at this stage. This is a question of fact. We reject Wells Fargo's

argument now. Our finding also necessitates a finding the brothers plead damages caused by Wells Fargo's negligence because they allege monetary loss caused by opening the accounts without verification of identity.

But this brings us to Wells Fargo's argument the brothers cannot premise their negligence claim on failure to follow banking laws and regulations such as the Bank Secrecy Act provisions of the Patriot Act. We agree with Wells Fargo on this well-settled principle.[141] Judge Goldberg found in *Regional Produce Cooperative Corporation v. TD Bank, N.A.*, with facts analogous to the ones presented today, "if . . . Plaintiff's negligence claim is premised on Defendant's breach of its duty to act consistent with generally accepted banking practices, the negligence claim is properly plead."[142] In *Regional Produce*, the plaintiff alleged: "Defendant had a duty to (1) 'act in a manner consistent with generally accepted banking practices,' and (2) 'implement policies under 31 C.F.R. § 103.21 which would allow it to appropriately identify its customers during the account opening process via documentary and non-documentary means.'"[143]

The brothers do not allege Wells Fargo did not follow generally accepted banking practices. They allege Wells Fargo "violated their own account opening and maintenance, and usage, policies," and Wells Fargo owes a duty to the public "to adhere to banking laws and regulation," and "not create fake accounts under random folks names without their knowledge."[144] We cannot construe these conclusions as allegations Wells Fargo failed to follow general banking practices as the plaintiff in *Regional Produce* alleged.  The brothers do not allege some type of generally accepted banking practices which could set the standard of care.

We note Wells Fargo does not argue it did not owe a duty to the brothers.[145] It is unsettled whether a bank owes a duty under negligence law to non-customers.[146] We will not argue for Wells Fargo nor will we analyze elements of negligence Wells Fargo does not challenge at this stage.

We nonetheless dismiss the brothers' claim because they do not allege a cognizable duty owed to them when opening the accounts.

### 3. The brothers do not state a negligence claim arising from Wells Fargo's refusal to refund or otherwise compensate them following its investigation.

The brothers also allege Wells Fargo negligently failed to refund them the settlement funds upon investigating the conduct described herein. We do not agree the brothers plead a claim for negligence for Wells Fargo's failure to refund the money after their investigation.

Wells Fargo agreed to undertake an investigation into the brothers' purported loss once they reported the information to Wells Fargo. Upon agreeing to investigate, Wells Fargo owed the brothers a duty to conduct the investigation in a reasonable manner. Wells Fargo did not undertake a duty to repay them the money their mother stole from them by agreeing to investigate her alleged conduct with Wells Fargo.[147] The brothers allege Wells Fargo breached a duty by failing to refund their money. They do not allege a breach of the duty owed here because Wells Fargo had no duty to refund the money merely by undertaking the loss investigation. The brothers have not alleged a breach of the duty to conduct a reasonable investigation.

The brothers also do not plead a causal connection between Wells Fargo's negligence and the brothers' economic harm.[148] They allege Wells Fargo's failure to compensate them caused loss of $62,470, as well as emotional distress and "loss of sleep."[149] But the economic harm arising from the fraudulent checks already occurred at the time of Wells Fargo's investigation and ultimate refusal to refund.[150] The brothers attempt to allege Wells Fargo's assurances throughout the investigation process amount to a promise of new funds beyond their original loss.[151] We do not agree. Even if the brothers did state a claim, which they do not, they cannot recover the monetary

loss of $62,470 based on promises of a repayment because this loss occurred before the investigation and alleged promise.

## III.   Conclusion

We grant Wells Fargo's Motion to dismiss without prejudice to the brothers timely filing a second amended Complaint consistent with Rule 11 as we cannot today find an amendment would be futile on all possible claims.

---

[1] ECF Doc. No. 9 ¶¶ 1, 5.

[2] *Id.* ¶ 5.

[3] *Id.* ¶ 6.

[4] *Id.* ¶¶ 6–8.

[5] ECF Doc. No. 9 ¶¶ 8–10; s*ee also* ECF Doc. No 9-2 at 2-3.

[6] ECF Doc. No. 9 ¶¶ 15–18.

[7] *Id.* ¶ 16.

[8] *Id.* ¶¶ 19–20.

[9] *Id.*

[10] ECF Doc. No. 9 ¶¶ 14–18; ECF Doc. No. 9-4 at 5 (showing Elenore Rideout's signature and empty signature spaces under Jay and Judson Rideout's names with "submit manually" checked). The brothers support their Amended Complaint with various exhibits, including the application to open a bank account and a bank statement. ECF Doc. No. 9-4 (account application and deposit slip); 9-7 (account statement mailed to Eleanor Rideout, Jay Rideout, and Judson Rideout). The account with Eleanor, Jay, and Judson on it had a balance of $62,589.09 in it as of August 11, 2016. ECF Doc. No. 9-7. While we accept the brothers' allegations as true at this stage and the brothers allege mother opened "accounts," we note Joseph Rideout does not appear on the account statement or in the application for the account, and it appears mother deposited all three brothers' settlement checks into this account given the account balance in ECF Doc. No. 9-7. We also note the brothers inartfully use both "account" and "accounts" when alleging the events giving rise to this cause of action. ECF Doc. No. 9 ¶ 16 ("Without Plaintiff Rideout Bros, knowledge or permission, Wells Fargo opened up demand deposit **account** titled under Elenore Rideout name,

however, also titled the **accounts** under joint owners' names for the remaining Judson Bros.") (emphasis added), ¶ 21 ("Nevertheless, after WF enabled mother to deposit the Rideout Bros settlement checks they also allowed her to cash through the same Wells Fargo **account** on which Rideout Bros falsely appear as signatories, wherein the back of the check endorsement were forged") (emphasis added), ¶ 24. ("After Rideout Bros realized their predicament, they immediately reported the incident to WF Loss Management, and reported that they got dupped and never received a penny of the monies stemming to them from the settlement of their Father's wrongful death, and that the checks titled to their names were 'laundered' through WF **account** which was fraudulently, and negligently opened and maintained.") (emphasis added). Wells Fargo raises Joseph Rideout lacks standing in a footnote because he is not on the account appearing in the amended Complaint's exhibits. ECF Doc. No. 16-1 at 17. Accepting all well-pleaded facts as true, and because the brothers allege multiple accounts, at least in some places, we do not today dismiss Joseph Rideout for lack of standing.

[11] ECF Doc. No. 9 ¶ 21; ECF Doc. No. 9-4 at 6; ECF Doc. No. 9-5.

[12] ECF Doc. No. 9 ¶ 22.

[13] *Id.* ¶¶ 11, 21, 24; ECF Doc. No. 9-4, ECF Doc. No. 9-5.

[14] *Id.* at 24.

[15] ECF Doc. No. 9 ¶ 24.

[16] *Id.* ¶ 25.

[17] *Id.* ¶ 26.

[18] *Id.* ¶ 37.

[19] *Id.* ¶ 38.

[20] *Id.* ¶ 27.

[21] *Id.*

[22] *Id.* ¶ 28.

[23] *Id.* ¶¶ 28–29.

[24] ECF Doc. No. 9 ¶¶ 31, 35, 41, 58-59, 61, 63.

[25] The brothers do not sue under the Commercial Code which includes claims for conversion of a negotiable instrument. But Wells Fargo points out those claims are barred by the three-year statute of limitations. ECF Doc. No. 16-1 at 13–14; *see also* 13 Pa. Stat. and Cons. Stat. § 3118(g). The

brothers attach a deposit slip for $62,589.09 from August 11, 2016 to their amended Complaint, leading us to believe the conversion occurred over three years ago. ECF Doc. 9-4 at 6.

[26] Federal Rule of Civil Procedure 12(b)(6) requires a complaint to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The purpose of Rule 12(b)(6) is to test the sufficiency of the factual allegations in a complaint. *Sanders v. United States*, 790 F. App'x 424, 426 (3d Cir. 2019). If a plaintiff is unable to plead "enough facts to state a claim to relief that is plausible on its face," the court should dismiss the complaint. *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Kajla v. U.S. Bank Nat'l Ass'n as Tr. for Credit Suisse First Boston MBS ARMT 2005-8*, 806 F. App'x 101, 104 n.5 (3d Cir. 2020) (quoting *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011)). "A claim has facial plausibility when the plaintiff pleads factual content … allow[ing] the court to draw the reasonable inference … the defendant is liable for the misconduct alleged." *Robert W. Mauthe M.D., P.C. v. Spreemo, Inc.*, 806 F. App'x 151, 152 (3d Cir. 2020) (quoting *Zuber v. Boscov's*, 871 F.3d 255, 258 (3d Cir. 2017)). While "[t]he plausibility standard is not akin to a 'probability requirement,'" it does require the pleading show "more than a sheer possibility … a defendant has acted unlawfully." *Riboldi v. Warren Cnty. Dep't of Human Servs. Div. of Temp. Assistance & Soc. Servs.*, 781 F. App'x 44, 46 (3d Cir. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A pleading that merely 'tenders naked assertion[s] devoid of further factual enhancement' is insufficient." *Id.* (quoting *Iqbal*, 556 U.S. at 668).

In determining whether to grant a 12(b)(6) motion, "we accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the plaintiff" but "disregard threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements." *Robert W. Mauthe, M.D., P.C.*, 806 F. App'x at 152 (quoting *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878–79 (3d Cir. 2018)). Our Court of Appeals requires us to apply a three-step analysis to a 12(b)(6) motion: (1) we "'tak[e] note of the elements a plaintiff must plead to state a claim'"; (2) we "identify allegations that … 'are not entitled to the assumption of truth' because those allegations 'are no more than conclusion[s]'"; and, (3) "'[w]hen there are well-pleaded factual allegations,' we 'assume their veracity' … in addition to assuming the veracity of 'all reasonable inferences that can be drawn from' those allegations … and, construing the allegations and reasonable inferences 'in the light most favorable to the [plaintiff]'…, we determine whether they 'plausibly give rise to an entitlement to relief.'" *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021) (internal citations omitted); *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016).

[27] ECF Doc. No. 16-1 at 11–14.

[28] 73 Pa. Stat. § 201-3(a).

[29] *Hamburg v. Santander Bank*, N.A., No. 16-5142, 2016 WL 7404482, at *4 (E.D. Pa. Dec. 21, 2016) (quoting 73 Pa. Stat. § 201-9.2); *see also Balderston v. Medtronic Sofamor Danek, Inc.*, 285 F.3d 238, 241 (3d Cir. 2002) ("The statute unambiguously permits only persons who have purchased or leased goods or services to sue.") (quoting *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992)).

---

[30] *Jefferson v. Carosella*, No. 1527 EDA 2020, 1528 EDA 2020, 2021 WL 4775626, at *4 (Pa. Sup. Ct. Oct. 13, 2021) (citing *Gregg v. Ameriprise Fin., Inc.* 245 A.3d 637, 649 (Pa. 2021)).

[31] 245 A.3d 637 (Pa. 2021).

[32] The brothers argue: "Court [*sic*] should deny and disregard [Wells Fargo's] argument to the contrary wherein it is borderline sanctionable conduct to continue to litigate in total defiance of the most recent holding in this area by the State Supreme Court." ECF Doc. No. 17 at 13. We do not take kindly to allegations of purported "borderline" ethical violations possibly warranting sanctions in briefing, especially when the party asserting said sanctionable conduct blatantly misrepresents the holding of binding precedent.

[33] *Gregg*, 245 A.3d at 644 ("Ameriprise sought allowance of appeal in this Court. We granted review to determine: Whether the Superior Court improperly held a strict liability standard applies to a claim under the 'catch-all' provision of the [Trade Practices Law] as amended in 1996, even though the provision expressly requires proof of 'fraudulent or deceptive conduct.'").

[34] *Id.* (emphasis added).

[35] *Id.* at 647.

[36] *Id.* at 649–50.

[37] *Id.* at 652 ("Under the catch-all provision of the [Trade Practices law], the actor's state of mind as to the truth or falsity of the representation or the effect that the misrepresentation will have on the consumer is irrelevant.").

[38] *Mount v. Peruzzi of Langhorne, LLC*, No. 21-2166, 2021 WL 3708714, at *5 (E.D. Pa. Aug. 20, 2021).

[39] *Id.* at *4–5.

[40] *Id.*

[41] *Id.*

[42] *Id.* (citing *Gregg*, 245 A.3d at 646).

[43] *See Gregg*, 245 A.3d at 646; *Jefferson*, 2021 WL 4775626, at *4–5 (reiterating element of justifiable reliance post-*Gregg*); *Mount*, 2021 WL 3708714, at *5 (same); *Loduca v. WellPet LLC*, No. 21-cv-0954, at *3 (E.D. Pa. July 13, 2021) (same); *Dukich v. Ikea US Retail LLC*, No. 20-2182, 2021 WL 1534520, at *6 (Apr. 19, 2021) (same).

[44] 777 A.2d 95, 100 (Pa. Super. Ct. 2001).

[45] *Id.* at 107.

---

[46] *Id.* at 107–108.

[47] *Yenchi v. Ameriprise Fin., Inc.*, 161 A.3d 811, 820–21 (Pa. 2017) (quoting *Frowen v. Blank*, 493 Pa. 137, 425 A.2d 412, 416–17 (Pa. 1981)).

[48] *McNeil v. Wells Fargo Bank, NA*, No. 20-6319, 2021 WL 632640, at *6 (E.D. Pa. Feb. 18, 2021).

[49] ECF Doc. No. 17 at 8.

[50] *Id.* at 13 (arguing FAC ¶¶ 16–23, 25–27, and 30 allege justifiable reliance).

[51] *See Jefferson*, 2021 WL 4775626, at *4 ("In addition to proving that the statement had the tendency or capacity to deceive, a private plaintiff must also show that he, or she, relied on that statement to his, or her, financial detriment.").

[52] *See Palek v. State Farm Fire & Cas. Co.*, No. 20-070, 2021 WL 1561507, at *6 (W.D. Pa. Apr. 21, 2021) (finding defendant's representation "too vague for reliance . . . to be reasonable" where defendant's agent informed plaintiffs an insurance policy "would in fact cover their in-ground pool" but did not specify policy coverage under specific harms).

[53] *In re Rutter's Inc. Data Sec. Breach Litig.*, 511 F. Supp. 3d 514, 542 (M.D. Pa. 2021) (finding plaintiffs fail to sufficiently plead the "justifiable reliance" prong under the Trade Practices law) (emphasis in original). In *In re Rutter's Inc.*, Chief Judge Jones dismissed plaintiffs' Trade Practices law claim because they "only include[] a single, conclusory allegation that, 'Plaintiffs relied on [defendant's] misrepresentations and omissions relating to its data privacy and security" but "fail to *explicitly* plead their reliance on the privacy policy itself or any other representation made by [defendant] on the subject." *Id.*

[54] ECF Doc. No. 9 ¶¶ 24, 35.

[55] *Pine v. Dep't of Educ.*, No. 20-527, 2020 WL 4334885, at *9 (E.D. Pa. July 28, 2020).

[56] *Id.* at *1.

[57] *Id.* at *9.

[58] *Id.*

[59] *Santo v. U.S. Bank Nat'l Ass'n*, No. 17-1597, 2018 WL 4680090, at *3 (M.D. Pa. Sept. 28, 2018) (citing cases where reliance found, and holding the plaintiffs "do not set forth any action that they were induced to undertake or forego as a consequence of defendants' purportedly unlawful conduct, and thus they fail to properly plead justifiable reliance").

[60] ECF Doc. No. 9 at ¶¶ 24, 35.

[61] ECF Doc. No. 16-1 at 10–11 (relying on *Hamburg v. Santander Bank, N.A.*, No. 16-5142, 2016 WL 7404482 (E.D. Pa. 2016)).

[62] ECF Doc. No. 17 at 2–15.

[63] *Hamburg,* 2016 WL 7404482, at *1.

[64] *Id.*

[65] *Id.* at *4.

[66] *Gregg,* 245 A.3d at 646; *Jefferson*, 2021 WL 4775626, at *4–5; *Mount*, 2021 WL 3708714, at *4–5.

[67] ECF Doc. No. 17 at 5–6.

[68] *Frederico v. Home Depot*, 507 F.3d 188, 201–02 (3d Cir. 2007); *see also Hammond v. City of Phila.*, No. 00-5082, 2001 WL 823637, at *10 (E.D. Pa. June 29, 2010).

[69] *Valley Forge Towers South Condominium v. Ron-Ike Foam Insulators, Inc.*, 574 A.2d 641, 646–47 (Pa. 1990).

[70] *Id.*

[71] *See, e.g. Johnson v. MetLife Bank, N.A.*, 883 F. Supp. 2d 542, 547–48 (E.D. Pa. 2012) ("[S]tanding does not extend to 'a plaintiff lacking any commercial dealings with defendant . . . or to a party who made no purchase'") (citing *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 56 (3d Cir. 1992) and *Gemini Physical Therapy and Rehab., Inc. v. State Farm Mut. Auto. Ins. Co.*, 40 F.3d 63, 65 (3d Cir. 1994)).

[72] The brothers allege Wells Fargo violated the Patriot Act by failing to obtain their information when opening the account in their names. Our Court of Appeals has held "the Patriot Act does not provide for a private right of action for its enforcement." *Ray v. First Nat. Bank of Omaha*, 413 F. App'x 427, 430 (3d Cir. 2011). The brothers' counsel conceded as much at the Rule 16 conference during oral argument. The brothers' allegation in paragraph 23 has no bearing on our analysis here as it is a legal conclusion, and the brothers concede they do not bring an action under the Patriot Act nor could they.

[73] ECF Doc. No. 16-1 at 11.

[74] 73 Pa. Stat. § 201-2(4)(xxi).

[75] *Jefferson*, 2021 WL 4775626, at *4 (quoting *Gregg*, 245 A.3d at 649).

[76] *Id.* (citing *Gregg*, 245 A.3d at 651).

[77] ECF Doc. No. 16-1 at 14–15.

[78] ECF Doc. No. 17–18.

[79] *Gibbs v. Ernst*, 647 A.2d 882, 889 (Pa. 1994); *see also State Auto Prop. & Cas. Ins. Co. v. Sigismondi Foreign Car Specialists, Inc.*, No. 19-5578, 2021 WL 1343116, at *7 (E.D. Pa. Apr. 12, 2021) (quoting *Sajid v. Ijaz*, 828 F. App'x 831, 835 (3d Cir. 2020)).

[80] *Gross v. Coloplast Corp.*, 434 F. Supp. 3d 245, 249 (E.D. Pa. 2020).

[81] *Id.* (quoting *Bd. of Trs. of Teamsters Local 863 Pension Fund v. Foodtown, Inc.*, 296 F.3d 164, 172 n.10 (3d Cir. 2002)).

[82] *Id.* (citing *Institutional Inv'rs Grp. v. Avava, Inc.*, 564 F.3d 242, 253 (3d Cir. 2009)).

[83] ECF Doc. No. 9 ¶¶ 40–41, 44.

[84] ECF Doc. No. 9 ¶¶ 15–16. *Cf. Pa. v. Navient Corp.*, 967 F.3d 273, 291 (3d Cir. 2020) (finding plaintiff "alleges . . . numerous affirmative misrepresentations" in the form of statements on defendant's website and statements directly made to consumers); *Bortz v. Noon*, 729 A.2d 555, 560-61 (Pa. 1999) (finding no intentional fraudulent misrepresentation although an agent made an affirmative misrepresentation because they had no knowledge the statement was false). The brothers allege Wells Fargo sent monthly statements addressed to them and their mother, but the brothers do not allege they received and acknowledged the monthly statements or the statements contained misrepresentations. *See* ECF Doc. No. 9 ¶ 19; ECF Doc. No. 9-7.

[85] ECF Doc. No. 9 ¶ 16.

[86] We note the brothers exclusively focus on their fraud claim relating to Wells Fargo's statements during the loss investigation in their response. ECF Doc. No. 17 at 15–22. We nonetheless address the merits of the claim.

[87] ECF Doc. No. 9 at ¶¶ 37–38, 41–42.

[88] The brothers allege:

> "[Wells Fargo] loss management made statements to the Rideout Bros and regarding Rideout Bros, that lead them to believe, that [Wells Fargo] would refund their monies if they find facts Bros presented to be substantiated.
>
> \*     \*     \*
>
> During the course of the 'investigation,' [Wells Fargo] loss management made many statements to the Rideout Bros, regarding this incident, that were intended to lead them to believe, and have led them to believe, that if the facts set forth by the Rideout Bros regarding how they were deprived of all proceed of late Father's settlement through [Wells Fargo] account, also set forth in this

31

Complaint, turnout [*sic*] out [*sic*] be true, [Wells Fargo would at least refund the face amount of the settlement checks they helped 'launder.'

\*   \*   \*

Wells Fargo's Loss Management . . . and any and all encouraging statements they made to Rideout Bros, were made, under false pretenses of good faith effort to remedy the wrong, when in fact, the entire 'investigation'/'claim', was but a self-serving sham.

\*   \*   \*

It is plainly evidence that [Wells Fargo] not only orchestrated illegal account opening scheme and without Bros authorization or knowledge, 'laundered' significant monetary proceeds through such account, but also entire Loss Management investigation into this matter, was a farse, and a fraud, designed to: 1) elicit from the Bros any information that would help [Wells Fargo] putthis matter to rest with as little financial harm and bad PR exposure, as possible, 2) eliciting information that would help [Wells Fargo] pin the Rideout Bros against their mother, fueling family turmoil while keeping [Wells Fargo] in a role of an 'innocent peacemaker' and 3) most importantly, waste valuable time off of the fairly short 2 years statute of limitations clock for Rideout Bros most potent tort . . ., under a false pretense of forthcoming compensation from [Wells Fargo], which of course never came, despite undeniable truth of their allegations."

ECF Doc. No. 9 ¶¶ 26, 37, 40, 41.

[89] *Id.* ¶ 40.

[90] *Id.* ¶¶ 41–42.

[91] *Id.*

[92] In rebuttal, the brothers seem to argue only discovery will "reveal" "the true extent" of information they provided to Wells Fargo, and presumably what Wells Fargo said to them. ECF Doc. No. 17 at 17. However, they then argue the statements were made on a recorded line, which counsel for the brothers admitted he had not listened to yet during oral argument. Moreover, the brothers seem to argue they plead Wells Fargo "promised . . . so long as they cooperated with the investigation they would 'get their money back.'" But this is not what the brothers plead. They plead "[Wells Fargo] loss management made statements to the Rideout Bros and regarding Rideout Bros, **that lead them to believe, that [Wells Fargo] would refund their monies if they find facts Bros presented to be substantiated.**" ECF Doc. No. 9 ¶ 26 (emphasis added). The brothers' arguments here are unpersuasive.

[93] *See also Hunt v. U.S. Tobacco Co.*, 538 F.3d 217, 222 n.4 (3d Cir. 2008) ("A justifiable-reliance requirement . . . requires the plaintiff to go further–he must show that he justifiably bought the product in the first place (or engaged in some other detrimental activity) because of the misrepresentation.".

[94] *Cf. Levine v. First Am. Title Ins. Co.*, 682 F.Supp. 442, 467 (E.D. Pa. 2010) (holding plaintiffs successfully alleged justifiable reliance where plaintiffs stated they would not have paid a higher premium for title insurance had they known the actual rate); *see also Barnard v. Verizon Commc'ns, Inc.*, 451 F. App'x 80, 85 (3d Cir. 2011) (finding appellants did not allege reliance and economic loss "because there is no indication as to how, when, or why Appellants purchased or sold . . . stock"). In *Barnard*, our Court of Appeals found no justifiable reliance where facts did not allege "how any misrepresentation or omission impacted Appellants' decisions to purchase or sell [the] securities [at issue]." *Id.*

[95] ECF Doc. No. 16-1 at 15–16.

[96] *Hailey v. Beard*, No. 19-2171, 2019 WL 5592578, at *15 (E.D. Pa. Oct. 29, 2019) (quoting *Stock v. Braswell*, No. 16-6412, 2017 WL 3279059, at *8 (E.D. Pa. Aug. 2, 2017)).

[97] *Id.* (quoting *Stock*, 2017 WL 3279059 at *8).

[98] 36 A.3d 83, 84 (Pa. 2011).

[99] *See, e.g. Herschman v. Muhlenberg Coll.*, 17 F. Supp. 3d 454, 459 (E.D. Pa. 2014) (discussing *Toney* and finding "the Supreme Court was evenly divided. Accordingly, the Superior Court decision was affirmed, and the Supreme Court opinion has no precedential value . . . [but] the opinion is persuasive authority."); *Butta v. GEICO Cas. Co.*, 383 F. Supp. 3d 426, 436 (E.D. Pa. 2019) (citing *In Interest of O.A.*, 717 A.2d 490, 496 n.4 (Pa. 1998) ("Under Pennsylvania law, '[w]hile the ultimate order of a plurality opinion; i.e. an affirmance or reversal, is binding on the parties in that particular case, legal conclusions and/or reasoning employed by a plurality certainly do not constitute binding authority.'")).

[100] *Toney*, 36 A.3d at 91.

[101] *Id.*

[102] *Id.* at 95.

[103] *Id.*

[104] *Id.*

[105] *Id.* at 99.

[106] *Herschman*, 17 F.Supp.3d at 460 n.8 (collecting cases).

[107] *Toney*, 36 A.3d at 95.

[108] ECF Doc. No. 9 at ¶ 56.

[109] *Robert W. Mauthe*, *M.D.*, *P.C.*, 806 F. App'x at 152 (quoting *City of Cambridge Ret. Sys.*, 908 F.3d at 878–79 ("[W]e accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the plaintiff" but "disregard threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements.")).

[110] *Reg'l Produce Coop. Corp. v. TD Bank, N.A.*, No. 19-1883, 2020 WL 1444888, at *12 (E.D. Pa. Mar. 24, 2020); *Hamburg*, 2016 WL 7404482, at *2.

[111] ECF Doc. No. 16-1 at 16–17.

[112] ECF Doc. No. 17 at 20.

[113] *Trans Penn Wax Corp. v. McCandless*, 50 F.3d 217, 232 (3d Cir. 1995).

[114] *Hoy v. Angelone*, 720 A.2d 745, 753 (Pa. 1998) (quoting *Buczek v. First Nat'l Bank of Mifflintown*, 531 A.2d 1122, 1125 (Pa. Super. Ct. 1987)).

[115] *Id.* In *Hoy*, the Pennsylvania Supreme Court provided a string citation of cases finding intentional infliction of emotional distress:

> *See e.g.*, *Papieves v. Lawrence*, 437 Pa. 373, 263 A.2d 118 (1970) (defendant, after striking and killing plaintiff's son with automobile, and after failing to notify authorities or seek medical assistance, buried body in a field where discovered two months later and returned to parents (recognizing but not adopting section 46)); *Banyas v. Lower Bucks Hospital*, 293 Pa.Super. 122, 437 A.2d 1236 (1981) (defendants intentionally fabricated records to suggest that plaintiff had killed a third party which led to plaintiff being indicted for homicide); *Chuy v. Philadelphia Eagles Football Club*, 595 F.2d 1265 (3d. Cir.1979) (defendant's team physician released to press information that plaintiff was suffering from fatal disease, when physician knew such information was false).

*Id.*

[116] ECF Doc. No. 9 ¶¶ 16–18.

[117] *Id.* ¶¶ 40–42.

[118] No. 06-835, 2006 WL 1409492, at *4 (S.D.N.Y. May 23, 2006).

[119] *Id.* at *1.

[120] *Id.*

[121] *Id.* at *1-2.

[122] *Id.* at *4.

[123] *Id.*

[124] ECF Doc. No. 9 ¶¶ 65, 67–68.

[125] *Id.*

[126] *McNeil*, 2021 WL 632640, at *5.

[127] ECF Doc. No. 16-1 at 17.

[128] *Env't Equip. & Serv. Co. v. Wachovia Bank*, *N.A.*, 741 F. Supp. 2d 705, 712 (E.D. Pa. 2010) (citing *N.J. Bank, N.A. v. Bradford Sec. Operations, Inc.*, 690 F.2d 339, 345 (3d Cir. 1982)).

[129] *Id.* (citing *N.J. Bank*, 690 F.2d at 346).

[130] ECF Doc. No. 16-1 at 18–19.

[131] *Id.* at 20–21; *see also* 13 Pa. Stat. and Cons. Stat. § 3118(g) (providing a three-year statute of limitations for claims of conversion, breach of warranty, and actions under Division 3 of the Code).

[132] ECF Doc. No. 17 at 19.

[133] 13 Pa. Stat. and Cons. Stat. § 3420.

[134] 13 Pa. Stat. and Cons. Stat. § 3420, cmt. 1.

[135] 100 F. Supp. 2d 289, 292 (E.D. Pa. 2000).

[136] *Id.*

[137] *Id.*

[138] ECF Doc. No. 9 ¶¶ 21, 24; ECF Doc. No. 9-4; ECF Doc. No. 9-5.

[139] ECF Doc. No. 16-1 at 14–16.

[140] Wells Fargo argues we must treat their arguments as unopposed because the brothers do not specifically respond. ECF Doc. No. 18 at 11. Wells Fargo relies on Judge McNulty's opinion in *Vicente v. Johnson & Johnson*, No. 15-84, 2020 WL 7586907, at *14 (D.N.J. Dec. 21, 2020), *amended,* No.15-84, 2021 WL 2328159 (D.N.J. June 7, 2021). In *Vicente*, Judge McNulty cited to our Court of Appeals's decision in *Hollister v. U.S. Postal Service*, to dismiss the plaintiff's claim because the plaintiff's opposition brief in response to defendant's motion for summary judgment did not address an argument raised by the defendant. *Id.* We disagree with Judge McNulty. In *Hollister*, our Court of Appeals addressed whether the district court erred in

dismissing the plaintiff's complaint for failure to comply with the Middle District of Pennsylvania Local Rule 7.6, which requires all motions to be responded to within fourteen days or the motion is treated as unopposed. *Hollister v. U.S. Postal Serv.*, 142 F. App'x 576, 577 (3d Cir. 2005). Hollister, a licensed attorney acting pro se, failed to file a response to the defendant's motion to dismiss his amended complaint. *Id.* Our Court of Appeals found the district court did not abuse its discretion. *Id.* In doing so, it relied on its previous holding in *Stackhouse v. Mazurkiewicz*, where it held: "While we are not unmindful of the problems of the district court in dealing with a large volume of litigation, we nevertheless conclude that under *Anchorage Associates v. Virgin Islands Board of Tax Review*, 922 F.2d 168 (3d Cir.1990), **this action should not have been dismissed solely on the basis of the local rule without any analysis of whether the complaint failed to state a claim upon which relief can be granted, as provided in Fed.R.Civ.P. 12(b)(6)**. Local Rule 401.6 should be understood to facilitate the court's disposition of motions rather than to impose a sanction for failure to prosecute or defend." 951 F.2d 29, 30 (3d Cir.1992) (emphasis added). We decline to accept Wells Fargo's invitation to view its motion to dismiss as unopposed. The brothers filed a response opposing its motion. Wells Fargo does not support its argument under our local rules nor would we be persuaded if it did. There is no reason we should not address Wells Fargo's motion to dismiss on the merits.

[141] *See, e.g. Reg'l Produce Coop. Corp.*, 2020 WL 1444888, at *11; *Hamburg*, 2016 WL 7404482, at *2 n.2.

[142] *Reg'l Produce Coop. Corp.*, 2020 WL 1444888, at *12.

[143] *Id.*

[144] ECF Doc. No. 9 at ¶¶ 56, 64–65.

[145] It argues: "Here, Plaintiffs' negligence claim arising out of the account opening fails because (among other reasons) it does not allege cognizable damages." ECF Doc. No. 16-1 at 15.

[146] *Hamburg*, 2016 WL 7404482, at *2 n.2 ("Courts in numerous jurisdictions have held that 'a bank does not owe a duty of care to a noncustomer with whom the bank has no direct relationship.' *Eisenberg v. Wachovia Bank, N.A.*, 301 F.3d 220, 225 (4th Cir. 2002) (citing cases). But the law is unsettled as to whether a plaintiff's name on a fraudulent account establishes a relationship for the purposes of negligence. Compare [*Eisenberg*, 301 F.3d] at 226 . . . citing *Software Design & Application, Ltd. v. Hoefer & Arnett, Inc.*, 56 Cal. Rptr. 2d 756, 759-6 (Cal. App. 1996)); *Volpe v. Fleet Nat. Bank*, 710 A.2d 661, 664 (R.I. 1998)); with *Lebanon Cty. Earned Income Tax Bureau v. Bank of Lebanon Cty.*, Nos. 2007-01270, 2008-990, 2011 WL 12847599, at *8-9 (Pa. Cmmn. Pls. Ct. Jan. 10, 2011) (finding bank owed duty of care to plaintiff where bank account was opened in its name and checks deposited into account were made payable to plaintiff).").

[147] The brothers in response to Wells Fargo's motion to dismiss argue Section 323 of the Restatement of Torts creates "a duty to conduct [the investigation] with ordinary care," and Wells Fargo "undertook to conduct the 'investigation' and with it promise Plaintiffs' a refund." ECF Doc. No. 17 at 18–19. The brothers conflate a duty to conduct a reasonable investigation and the

duty to refund the brothers' money. They seem to concede in their response they didn't have a *duty* to refund the money; rather, Wells Fargo promised to refund the money.

[148] *McNeil*, 2021 WL 632640, at *5.

[149] ECF Doc. No. 9 ¶¶ 28–29.

[150] *Id.* ¶ 35.

[151] ECF Doc. No. 17 at 17.